38 F.3d 514
 18 Employee Benefits Cas. 2358
 Maxine BARTLETT, Plaintiff/Appellee/Cross-Appellant,
v.
MARTIN MARIETTA OPERATIONS SUPPORT, INC. LIFE INSURANCE PLAN
(formerly known as the GE Operations Support, Inc.
Life Insurance Plan),
Defendant/Appellant/Cross-Appellee.
 Nos. 93-1276, 93-1278.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 14, 1994.
 
 Marla Prudek-Wyatt, Colorado Springs, CO (L. Dan Rector, Wittman & McCord, Colorado Springs, CO, with her on brief), appearing for plaintiff/appellee/cross-appellant.
 Gregory J. Kerwin, Gibson, Dunn & Crutcher, Denver, CO (Joseph P. Busch, III, Gibson, Dunn & Crutcher, Irvine, CA, with him on brief), appearing for defendant/appellant/cross-appellee.
 Before KELLY and McKAY, and ROSZKOWSKI,* Senior District Judge.
 ROSZKOWSKI, Senior District Judge.
 This is an appeal from the district court's award of summary judgment in favor of the plaintiff. The judgment awarded $150,000.00 in life insurance proceeds plus attorney's fees to the plaintiff resulting from her husband's death. The defendant appeals the entire judgment, while the plaintiff has filed a cross-appeal challenging the amount of attorney's fees awarded as less than the amount requested by the plaintiff's counsel. As the insurance policy was part of an employee benefit plan, the district court had jurisdiction under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Sec. 1001 et seq. This court has jurisdiction pursuant to 28 U.S.C. Sec. 1291. For the reasons stated herein, we affirm in part, reverse in part, and remand the case to the district court.
 I.
 The plaintiff, Maxine Bartlett, is the widow of Frank Bartlett. Mr. Bartlett was hired by the defendant's predecessor company, G.E. Operations Support ("GEOS"), in February of 1990. He was hired as a civilian employee of its subsidiary, Operation and Maintenance Service, Inc. ("OMS"). He was hired as a regular full-time employee and had a normal work week of forty hours.
 In mid-1990, GEOS decided to change its benefits plan for employees to a cafeteria plan. In the fall of 1990, as part of the change in the benefits plan, a presentation was given to the employees, describing the flex benefits program. The employees were then asked to make an individual election of benefits under the new plan. At that time, there was no summary plan description detailing the qualifications on the benefits. A flex benefits workbook was given to the employees at the presentation. The workbook states:
 Who is eligible?
 All regular full-time employees of OMS are eligible to participate in the flexible benefits program. You are considered a full-time employee if you are regularly scheduled to work 40 hours in a week, usually consisting of five work days (or a full-time schedule in effect for your work location.)
 A complete description of the Flexible Benefits Program is contained in insurance contracts and legal documents on file in the Human Resources Department. Should any questions arise about the nature and extent of your benefits, the formal language of those documents, and not the informal wording of the Workbook, will govern.[1]
 Employees were informed that their choices would be effective beginning January 1, 1991. On November 4, 1990, Frank Bartlett filled out the OMS Flexible Benefits Enrollment/Change Form, indicating an election of Option A, which provided $150,000.00 in life insurance benefits.
 Sometime previous to submitting the benefits election form, Mr. Bartlett began to experience severe stomach pain. He sought medical attention for his condition and was scheduled for diagnostic surgery. November 10, 1990 was the last day Mr. Bartlett reported to his regular job with OMS. By November 13, 1990, Mr. Bartlett was informed that he had a terminal, inoperable colon cancer. Except for a one day release for Christmas, Mr. Bartlett was continuously hospitalized from November 13, 1990 to January 8, 1991.
 After he was hospitalized, GEOS placed Mr. Bartlett on a medical leave of absence and received disability benefits. On January 8, 1991, Mr. Bartlett was released from hospitalization, after his doctors decided that there was no hope of arresting his condition. Mr. Bartlett received home nursing care and died at home on January 17, 1991. The plaintiff states that from November 13, 1990 to his death on January 17, 1991, Mr. Bartlett never returned to work and was physically incapable of doing so.
 Following Mr. Bartlett's death, the plaintiff made a demand on the policy for $150,000.00. The plan administrator determined that Mr. Bartlett had not qualified for coverage under the new plan, but remained covered under the old plan, which provided for $20,000.00 in benefits. The plan administrator determined that the flex plan took effect for "active employees" only. He stated that "Mr. Bartlett went on medical leave of absence on November 10, 1990, and never returned to active status or the active payroll, and therefore never became eligible for the plan...." Docket Entry 34, Appellee's Appx. p. 34.
 This reasoning for the denial is based on the summary plan description for the flex plan, which defined eligibility for "regular full-time active employees." The summary plan description, however, was not printed until after Mr. Bartlett's death, and therefore never available to Mr. Bartlett. The material available consisted of the plan workbook, handed out to employees. The workbook did not include "active" in defining eligibility for a regular full-time employee.
 The plaintiff then filed suit in the state court, claiming the $150,000.00 policy was in effect when Mr. Bartlett died. The defendant removed the cause to the United States District Court for the District of Colorado under ERISA. In ruling on cross-motions for summary judgment, the district court granted the plaintiff's motion. The district court found the workbook was the governing plan as of January 1, 1991 and determined that even though Mr. Bartlett was on medical leave, he was still a regular full-time employee. The district court applied a de novo standard of review, finding that as of January 1, 1991, there was no discretionary language for the plan administrator to interpret, until the plan summary was printed in March, after Mr. Bartlett's death.
 The district court also awarded the plaintiff a reduced attorney's fee, finding the requested fees to be unreasonable. The plaintiff appeals that portion of the judgment, while the defendant has appealed the entire judgment.
 II.
 Appellate review of summary judgment is de novo. Awbrey v. Pennzoil Co., 961 F.2d 928, 930 (10th Cir.1992). The issue before the court is to determine whether the district court properly determined that Mr. Bartlett satisfied the plan's eligibility requirements for the new life insurance benefits.
 If an employee benefits plan gives the administrator or fiduciary officer discretionary authority to determine plan eligibility or to construe the terms of the plan, the court must review that decision under an arbitrary and capricious standard of review. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); Winchester v. Prudential Life Insurance Co. of America, 975 F.2d 1479, 1483 (10th Cir.1992). Absent such discretionary authority, the court reviews the plan administrator's decision de novo. Firestone, 489 U.S. 101, 109 S.Ct. 948; Winchester, 975 F.2d at 1483. Here, the district court made a de novo review of the plan administrator's denial of death benefits, after determining there was no discretionary authority reserved to the plan administrator in the plan workbook.
 The defendant has conceded that Mr. Bartlett's eligibility should be determined with reference to the language stated in the plan enrollment workbook. The district court properly decided to disregard the subsequent language of the summary plan description because it was not printed or made available to employees until after Mr. Bartlett's death. The court reasoned that Mr. Bartlett, through his beneficiary, could not be bound to terms of the policy of which he had no notice.
 After determining the language of the workbook governed, the court applied a de novo review of the plan administrator's decision to deny the increased benefits to the plaintiff. In deciding to apply a de novo review of the plan administrator's decision, the court again looked to the language of the governing plan, the employee workbook. The defendant argues that the plan summary description contains language vesting discretionary authority in the plan administrator. This is true. However, we agree with the district court's conclusion that the language had no effect because it had not been published and distributed until after Mr. Bartlett's death. Subsequent modifications to the plan, through the drafting of the summary plan description, do not effect the terms of the written plan in existence when the plaintiff's claim arose. See Hozier v. Midwest Fasteners Inc., 908 F.2d 1155 (3rd Cir.1990); Lipscomb v. Transac, Inc., 749 F.Supp. 1128 (M.D.Ga.1990); Bellino v. Schlumberger, 753 F.Supp. 394 (D.Me.1990), aff'd, 944 F.2d 26 (1st Cir.1991).
 "Contract language in an ERISA plan is to be given its plain meaning." Rodriguez-Abreu v. Chase Manhattan Bank, 986 F.2d 580, 586 (1st Cir.1993); see also Burnham v. Guardian Life Ins. Co. of America, 873 F.2d 486, 489 (1st Cir.1989); Phillips v. Lincoln National Life Ins. Co., 978 F.2d 302, 308 (7th Cir.1992); Brewer v. Lincoln National Life Ins. Co., 921 F.2d 150, 154 (8th Cir.1990). The defendant agrees that the issue is whether Mr. Bartlett was a regular full-time employee at the time of his death. What the defendant contends, however, is that "regular full-time" is synonymous with "active." If the defendant wanted to limit benefits to regular full-time employees who were actively working, it could have done so. In fact, the defendant previously argued that the summary plan description should be the governing plan in this action, in which eligibility has been limited to "regular, full-time active" employees.
 The defendant argues that Edwards v. Great-West Life Assurance Co., 20 F.3d 748 (7th Cir.1994), is analogous to this case. In Edwards, the Seventh Circuit reversed the district court's judgment in favor of the plaintiff widow who claimed death benefits on an ERISA plan. The plan there provided that the "insurance of any employee who is not actively at work on the date his insurance would otherwise become effective shall not become effective until the date of his return to work." The employee had been injured at home and lapsed into a coma and died on the day he would have otherwise qualified for the life insurance benefits. The policy in Edwards had the term "actively at work" as an eligibility requirement for life insurance. The plaintiff argued that the defendant was trying to equate "actively at work" with another term in the contract, "actually at work." Id. at 749 n. 1. The court there noted that while "actively at work" was susceptible to a narrower interpretation, it could still not interpret the phrase as expansively as the plaintiff would have required to succeed on the merits.
 Edwards decides the issue of eligibility at a higher level, where the phrases "actively at work" and "actually at work" were used a number of times in the contract of insurance. This case does not present the same level of sophistication in the drafting of the documents on which this action is based. As such, we are looking at a unique set of circumstances in the drafting of the workbook and the timing of the publication of the summary description, as well as the circumstances of the decedent's death. Our holding today is necessarily limited to these unique circumstances.
 Gridley v. Cleveland Pneumatic Co., 924 F.2d 1310 (3rd Cir.1991), also presented a similar issue. In Gridley, the decedent's widow claimed supplemental death benefits for which she alleged her husband had been eligible. Mr. Gridley had ceased actively working due to cancer, prior to the effective date of the supplemental coverage. The supplemental benefits included the eligibility requirement of being actively at work, as stated in the summary plan description. The overview brochure provided to employees, however, failed to mention the actively at work requirement. Id. at 1313. The Third Circuit found the brochure did not constitute the plan description and that the plan administrator was not estopped from denying benefits despite the plaintiff's reliance on the brochure.
 Gridley is also distinguishable from the case at bar. The parties did not dispute the availability of the summary description which included the actively at work requirement. Coupled with the reference to the summary plan description, the terms of the brochure was not an adequate description upon which the plaintiff could rely. The facts here indicate that the workbook was the only documentation available to the employees of GEOS.[2]
 The court is obliged to give terms their plain meaning whenever possible. Suppose the decedent in question had been on vacation or had a temporary disability, such as a broken leg. While that employee was under that status the employee would not be "active." We do not believe, however, that such status would preclude the employee from still being one of the company's regular full-time employees.
 We agree with the district court's conclusion that the workbook constituted the benefit plan. The workbook describes eligibility for regular full-time employees and does not qualify that description with the term "active." Further, the workbook included a statement that "[a] complete description of the Flexible Benefits Program is contained in insurance contracts and legal documents on file in the Human Resources Department. Should any question arise about the nature and extent of your benefits, the formal language of those documents, and not the informal working of the workbook, will govern." The plaintiff correctly points out that the summary plan description had not yet been written and that there was no evidence placed on the record to indicate the existence of any other documents or contracts to which an employee might refer to answer any question.
 The eligibility language of the plan is a "regular full-time employee." Mr. Bartlett was hospitalized at the time with a terminable disease. The parties agree that he was unable to return to work and that he was placed on medical leave (either with or without his consent). Despite those factors, Mr. Bartlett was still a regular full-time employee. He was hired as a regular full-time employee and was still shown to be a regular full-time employee in the company's personnel records before his death.
 There is no dispute that Mr. Bartlett was disabled by his condition. However, the disability did not remove him from the list of regular full-time employees. Disability, as such, can disqualify an employee from being actively working, but does not necessarily disqualify an employee from being a regular full-time employee. Given the language of the benefits workbook, there is no language to disqualify Mr. Bartlett from the benefits package for which he opted. The district court properly found Mr. Bartlett was eligible for the increased death benefits.
 III.
 The plaintiff has appealed the district court's award of attorneys' fees. The plaintiff submitted a bill with supporting affidavits totaling approximately $45,000.00. The district court found the request to be unreasonable and summarily adopted the defendant's suggestion of $14,295.00 as a reasonable award of attorneys' fees.
 Pursuant to 29 U.S.C. Sec. 1132(g)(1), attorneys' fees are awarded in the sound discretion of the district court. In deciding to award attorneys' fees in an ERISA case, the district court must consider several factors:
 (1) [T]he degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to personally satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.
 McGee v. Equicor-Equitable HCA Corp., 953 F.2d 1192, 1209 n. 17 (10th Cir.1992) (quoting Gordon v. United States Steel Corp., 724 F.2d 106, 109 (10th Cir.1983)); see also Ramos v. Lamm, 713 F.2d 546 (10th Cir.1983) (criteria testing reasonableness of Sec. 1988 attorneys' fee awards).
 The district court, in its ruling, stated that "[t]he Court has considered the factors applicable when determining an award of attorneys' fees under ERISA ... and finds the plaintiff's request unreasonable. The request includes charges for duplicative work, charges for research on issues on which plaintiff did not prevail, and hourly rates that appear high. The Court adopts defendant's suggestion of $14,295.00 as a reasonable award of attorneys' fees." Bartlett v. G.E. Operations Support, Inc., Life Insurance Plan, No. 92 Z 481 (D.Colo. June 10, 1993) (Order, inter alia, on Rule 59 motion and petition for attorneys' fees).
 Absent more particular findings of the district court indicating its basis for rejecting the plaintiff's request and adopting the defendant's suggestion, this court cannot determine whether the district court abused its discretion in setting the amount of fees awarded. We therefore find it necessary to remand the case back to the district court for more detailed findings regarding the award of attorneys' fees.
 IV.
 For the reasons stated, we affirm the district court's findings that Mr. Bartlett was a regular, full-time employee at the time of his death and that his beneficiary, Maxine Bartlett is entitled to the increased insurance proceeds. Because we find that the district court did not explain its ruling on the petition for attorneys' fees adequately for our review, the judgment on attorneys' fees is reversed and remanded to the district court for more particular findings pursuant to 29 U.S.C. Sec. 1132(g).
 Affirmed in part, reversed in part, and remanded.
 
 
 
 *
 The Honorable Stanley J. Roszkowski, Senior United States District Judge for the Northern District of Illinois, sitting by designation
 
 
 [1]
 As will be discussed infra, the summary plan description was distributed at the end of March, 1991, over two months after Mr. Bartlett's death. The summary plan description states that "[a]ll regular, full-time active GE Operations Support, Inc. employees are eligible to enroll in the Life Insurance Plan." (emphasis added)
 
 
 [2]
 Other cases cited by the defendant are similarly distinguishable based upon the inclusion and notice of an actively at work term. See Burnham v. Guardian Life Ins. Co. of America, 873 F.2d 486 (1st Cir.1989) (The employee became terminally ill but continued to work for a short time out of his house. The court affirmed denial of benefits based on the policy requirement of working full-time at the employer's business establishment or other location in which the employee is required to travel.); Lea v. Republic Airlines, Inc., 903 F.2d 624 (9th Cir.1990) (The policy there had a clear requirement of active employment.)